UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ASSOCIATED BUILDERS AND CONTRACTORS,  )
EASTERN PENNSYLVANIA CHAPTER, INC.,    )
    430 W. Germantown Pike                )
    East Norriton, PA 19403               )
                                           )
F.A. ROHRBACH, INC.,                   )
    1302 N. 18th Street                   )
    Allentown, PA 18104                   )
                                           )
A.J. TRUNZO, INC.,                     )
    8013 Bethlehem-Bath Pike              )
    Bath, PA 18014                        )
                                           )
AND ENGELMAN CONSTRUCTION,             )
    4702 Indian Creek Road                )
    Macungie, PA 18062                    )
                                           )
        Plaintiffs,              )    C.A. No. _____
v.                                     )
                                           )
CITY OF ALLENTOWN, PENNSYLVANIA        )
    City Hall, 435 Hamilton St.           )
    Allentown, PA 18101                   )
                                           )
        Defendant.               )
                                           )

# COMPLAINT
## FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

### INTRODUCTION

1. Plaintiffs hereby file this Complaint for declaratory judgment and injunctive relief pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, to have this Court declare unlawful and enjoin enforcement of Section 130.29 of the Administrative Code of Allentown, which was enacted as Allentown Ordinance No. 14865 (Dec. 15, 2010) (hereafter referred to as "the Code Provision"). Plaintiffs further ask the Court to prevent the

incorporation of the unlawful Code Provision in Contract Bid Documents for the construction project known as Arts District Streetscape Enhancements (hereafter "the ADSE Project"), which is scheduled for a bid opening on November 1, 2011 by the City of Allentown Purchasing Department.

2. The Code Provision mandates that all construction projects subject to the control of the City that include the use of State and/or Federal funds and exceed $250,000 in costs shall require all successful bidders to enter into a collective bargaining agreement with one or more labor organizations as a condition of award of the project, pursuant to a Project Stabilization Agreement (PSA), also sometimes referred to as a Project Labor Agreement (PLA). A PSA/PLA is a controversial type of "pre-hire" collective bargaining agreement imposed by a project owner or construction manager on all contractors and subcontractors performing work on a particular project. When such agreements are imposed by public entities on private employers seeking to perform public works, PSAs interfere with the labor relations of private non-union contractors whose employees constitute the vast majority (more than 80%) of construction workers in Pennsylvania and nationally. The effect of government-mandated PSAs has been to increase taxpayer costs and restrain competition.

3. As further explained below, local governments are prohibited from regulating the labor relations of private employers in a manner inconsistent with and preempted by the National Labor Relations Act (NLRA), 29 U.S.C. §151, et seq., pursuant to the Supremacy Clause of the United States Constitution Art. VI, clause 2. The NLRA, *inter alia*, forbids the government from requiring employers to enter into specific collective bargaining agreements with any labor unions. *See* 29 U.S.C. § 158(d).

4. By enacting the unlawful Code Provision, the City of Allentown is regulating the labor relations of private employers in a manner that violates the NLRA and the Supremacy Clause. The Code Provision imposes a PSA requirement on all projects controlled by the City that are funded by the State or Federal government. Neither the State nor the Federal government has ordered or otherwise compelled the City to enact such a statutory mandate. The City has conducted no market research to justify the Code Provision on the grounds of "market participation," and the Code Provision is not narrowly tailored to any specific project based on that project's unique circumstances or showing of need.

5. But for the unlawful Code Provision, the City of Allentown would not have issued an invitation for bids that included the PSA requirement on the ADSE Project and would have instead bid and awarded the ADSE Project on the basis of full and open competition, without regard to the labor relations of the employers bidding for the work. The fact that the ADSE Project is being paid for by State funds constitutes another reason why the City cannot claim to be a "market participant" on this project.

6. Plaintiffs seek declaratory and injunctive relief to prevent immediate harm from the impact of the unlawful Code Provision on the present ADSE Project but also to prevent harm from the impact of the unlawful Code Provision on all future construction projects of the City exceeding $250,000 that are or may receive funds from the state or federal governments.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1331 and 1343. The rights sought to be secured in this action arise under 42 U.S.C. § 1983, 42 U.S.C. § 1988, 29 U.S.C. § 151, et seq., and the United States Constitution, including but not limited to, the Supremacy Clause of the United States Constitution, Art. VI, clause 2.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) which provides for venue in a judicial district where any defendant resides. The Defendant is present within this judicial district, and the unlawful conduct and the actions complained of herein have occurred with the City of Allentown, which is within the territorial jurisdiction of this Court.

## THE PARTIES

9. Plaintiff Associated Builders and Contractors, Eastern Pennsylvania Chapter, Inc. (ABCEPA) is a non-profit trade association that represents more than 500 construction contractors and related firms who are principally engaged in the construction industry in Pennsylvania and surrounding states. ABCEPA members include both unionized and non-union firms who share the belief that work in the construction industry should be awarded and performed on the basis of merit without regard to labor affiliation, on the basis of full and open competition. Many ABCEPA members employ workers who do not wish to be represented by or pay dues to any labor organization. More than 80% of all construction workers in Pennsylvania do not belong to any labor union and have no desire to work under the terms of a labor agreement. Many ABCEPA members regularly

4

bid on and perform work for government agencies and municipalities, including the City of Allentown.

10. ABCEPA is filing this action on behalf of its individual member companies, who have been and will continue to be injured by the unlawful Code Provision. ABCEPA has associational standing to bring this action as its members' representative because: (1) ABCEPA's members would otherwise have standing to sue in their own right; (2) the interests that ABCEPA seeks to protect are related to the association's purpose; and neither the claims asserted nor the relief requested, requires the participation of individual ABCEPA members in the lawsuit.

11. Plaintiffs F.A. Rohrbach, Inc., A.J. Trunzo, Inc., and Engelman Construction (hereafter the "Contractor Plaintiffs") are each contractors in the construction industry who are located in the Lehigh Valley and regularly do business in Allentown, Pennsylvania. The Contractor Plaintiffs regularly bid on and have successfully performed construction projects awarded by the City of Allentown, providing high quality, cost efficient construction services for the benefit of the City and its taxpayers. The projects on which the Contractor Plaintiffs have previously performed work for the City were bid and awarded without any attempt by the City to mandate that contractors sign any form of labor agreement as a condition of performing work. Each of the Contractor Plaintiffs is fully qualified and interested in bidding on and performing the Project at issue here, but is deterred from doing so by the unlawfully mandated PSA, for reasons which are further explained below.

12. Defendant The City of Allentown is a municipality within the Commonwealth of Pennsylvania, organized under the laws of the Commonwealth.

# FACTS RELATING TO THE UNLAWFUL CODE PROVISION

13. The Code Provision, as enacted on December 15, 2010, reads in its entirety as follows:

   130.29 STATE AND FEDERALLY FUNDED CONSTRUCTION PROJECTS

   The requirements of this ordinance shall apply whenever the total estimated cost of any construction, erection, installation, completion, alteration, repair of, or addition to, project subject to the control of the City shall include the use of State and/or Federal funds and exceed Two Hundred Fifty Thousand ($250,000) Dollars excluding architectural and engineering costs. For all applicable projects, the successful bidder must agree to enter into a Project Stabilization Agreement (PSA) under the terms and in a form substantively consistent with those as set forth in the PSA in Appendix A. Each PSA shall pertain to and shall expire and be of no further force or effect upon the completion of the Project. All proposals or requests for proposals shall include specific notice of this requirement. (14865 § 12/15/10).

14. Attached to the Code Provision as Appendix A is a document entitled "Allentown Labor Stabilization Agreement." (hereafter the Mandated Agreement). The Mandated Agreement which all successful bidders are required by the Code Provision to sign imposes *inter alia* the following obligations on Plaintiffs as conditions of performing work on the Project:

   (a) Recognition of the signatory unions as the sole and exclusive bargaining representatives of all employees performing work on the covered project, regardless of the wishes of Plaintiffs' employees not to be represented by such unions (Art. VI, Sec. 1);

   (b) Agreement of all contractors on the project to be bound by the terms of the Mandated Agreement (Art. IV, Sec. 3(a));

   (c) Agreement of all subcontractors on the project to be bound by the terms of the Mandated Agreement (Art. IV, Sec. 3(b));

6

(d) Requirement that contractors hire their workers through the signatory unions' job referral systems and hiring halls, rather than employing their own employees (Art. VI, Sec. 3), except for up to 10% of the workforce who may be designated as "core" employees under limited circumstances (Art. VI, Sec. 9);

(e) Requirement that contractors agree to be bound to a grievance and arbitration procedure which they have had no role in negotiating (Art. VII);

(f) Requirement of contributions into employee benefits funds designated by the signatory union and agreement to be bound by trust agreements which they have had no role in negotiating (Art. XI).

15. The Mandated Agreement discriminates against the Plaintiffs, *inter alia*, in the following ways:

(a) Non-union contractors who enter into the Mandated Agreement are likely to have to pay duplicative costs for various union benefit programs, while at the same time paying for many of these same benefits through their own company benefit plans. These duplicative costs may include payments for holidays, sick days, and vacation time, as well as apprenticeship training, insurance benefits, profit sharing, and company contributions into employee 401K plans.

(b) In addition to having to pay these additional costs, non-union contractors who become subject to the Mandated Agreement will be unable to use their own employees for the PSA-covered Project due to the union hiring hall requirements. Many non-union workers are also unwilling to grant exclusive representation of their interests on a job to an unelected labor organization, as is required by the PSA's

requirement that everyone working on the project be bound by union bargaining agreement(s).

(c) The Mandated Agreement also restricts the ability of non-union contractors to schedule their work crews in any manner other than that dictated by the PSA. This again makes the contractor less efficient and less able to staff the job properly.

(d) Non-union contractors who are required to sign the Mandated Agreement also lose the ability to hire subcontractors of their own choosing, inasmuch as all subcontractors also must adhere to the PLA. Most subcontractors of nonunion contractors are themselves non-union and are reluctant to sign a PLA for the reasons set forth above.

**APPLICATION OF THE CODE PROVISION TO THE ADSE PROJECT**

16. On October 10, 2011, the City of Allentown Purchasing Department issued an "Invitation to Bid" on the ADSE Project. The Bid Opening Date on the Invitation to Bid is stated to be November 1, 2011. Section 1.35 of the Invitation to Bid states as follows:

> The City of Allentown is issuing this Bid with a Project Stabilization Agreement. If the total contract amount is equal to or greater than $250,000.00, the successful Bidder shall agree to enter into a Project Stabilization Agreement (PSA) under the terms and in a form substantively consistent with those as set forth in Exhibit B. Each PSA shall pertain to and shall expire and be of no further force or effect upon the completion of the Project.

The above referenced PSA attached to the Invitation to Bid is identical to Appendix A of the Code Provision.

17. The ADSE Project is being funded in whole or in significant part by State Funds, and its value is expected to exceed $250,000. The Project is therefore covered by the Code

Provision, and it is for this reason that the Invitation to Bid includes the PSA Mandate. Plaintiffs received verbal confirmation of this fact from officials of the City of Allentown Purchasing Department. Other recent City projects which were not covered by the Code Provision have not included any PSA Mandate.

18. Prior to issuing the Invitation for Bids, the City conducted no market research specific to the ADSE Project to determine whether the PSA Mandate would promote efficiency in the construction of the project, increase the City's available pool of skilled local labor, or otherwise assure the timely and economical completion of the Project. In reality, as confirmed by recent studies of the impact of government-mandated labor agreements, by deterring contractors employing 80% of the construction workers from bidding on the project, the PSA is likely to increase the costs of construction, reduce the available pool of skilled labor, and delay the completion of the Project.

## COUNT I
### THE CODE PROVISION CONSTITUTES GOVERNMENT REGULATION OF PRIVATE LABOR RELATIONS AND IS THEREFORE PREEMPTED BY THE NLRA

19. The NLRA preempts state and local regulation of private sector labor relations in the construction industry. In particular, the NLRA prevents local governments from setting forth standards of conduct inconsistent with the substantive requirements of the NLRA, protecting the National Labor Relations Board's primary jurisdiction to decide what conduct is protected or prohibited in labor-management relations under the NLRA. The NLRA also protects private employers against local interference with policies that Congress intended to be left unregulated by the NLRA.

20. By enacting a statute that imposes the Mandated Agreement on all construction projects subject to the control of the City that include the use of State and/or Federal funds and

exceed $250,000, the City has engaged in unlawful regulation of private sector labor relations. In particular, the Code Provision is not narrowly tailored to one particular construction project, but instead applies to all State and/or Federally funded projects above the specified monetary threshold, without regard to whether a private owner/developer would utilize a PLA under such circumstances and without any study of whether the Mandated Agreement will cause work to be performed more cost efficiently for the City, or less so.

21. By regulating the labor relations of private employers in the above described manner, the Code Provision violates the Supremacy Clause of the U.S. Constitution, Art. VI, Clause 2.

## COUNT II
## THE CODE PROVISION VIOLATES PLAINTIFFS' RIGHTS UNDER
## 42 U.S.C. SECTION 1983

22. In addition to the rights of private employers to be protected against local government interference with the federally protected rights set forth above, Section 8(d) of the NLRA, 29 U.S.C. § 158(d), specifically prohibits the government from requiring private sector employers to enter into any labor agreement with a labor organization.

23. The Code Provision plainly requires private sector employers in the construction industry to enter into labor agreements with labor unions as a condition of being awarded construction projects covered by the Code Provision, and thus constitutes a deprivation of rights secured by the NLRA.

24. 42 U.S.C. § 1983 provides a federal remedy for local government interference with rights protected by other federal laws, including the NLRA. Plaintiffs are also entitled to

recover attorneys' fees for the Defendants' violation of their federally protected rights under 42 U.S.C. § 1988.

## COUNT III
## DECLARATORY JUDGMENT AND INJUNCTION ARE NECESSARY

25. Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 of the rights, duties and responsibilities of the Plaintiffs and Defendant in connection with the challenged Code Provision. In as much as the Project has been subjected to the Mandated Agreement as a direct result of and in conformity with the Code Provision, the Invitation for Bids of the Project must be declared unlawful and enjoined as well.

WHEREFORE, Plaintiffs respectfully request this Court:

1. To issue a declaration that the Code Provision is invalid and unenforceable because it is preempted by operation of the Supremacy Clause of the U.S. Constitution and the NLRA.

2. To issue a declaration that the Code Provision is invalid and unenforceable because it violates Plaintiffs' rights under Section 8(d) of the NLRA.

3. To issue a declaration that the Invitation to Bids issued for the Project pursuant to the Code Provision and incorporating the Mandated Agreement into the bid specifications for the Project is invalid and unenforceable.

4. To enjoin permanently enforcement of the Code Provision.

5. To enjoin the imposition of the Mandated Agreement into the bid specifications for the Project and to otherwise enjoin the bid opening and/or award of the Project so long as the Mandated Agreement is made a condition of contract award.

6. To award Plaintiffs their costs and attorney fees pursuant to law; and

7. To grant such other and further relief as the Court may deem proper.

>FLAMM WALTON PC
>794 Penllyn Pike
>Blue Bell, PA 19422
>Telephone: 267-419-1500
>Facsimile: 267-419-1560
>
>By: *[signature]*
>Walter H. Flamm, Jr.(16607)
>Robert J. Krandel (89485)
>Attorneys for Plaintiffs

Maurice Baskin (pro hac vice pending)
Lesley Pate Marlin (pro hac vice pending)
Venable LLP
575 7th St., N.W.
Washington, D.C. 20004
202-344-4000
mbaskin@venable.com
lmarlin@venable.com

324031 v1